UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

ROBERT LEE SCOTT, JR.,

             Plaintiff,         **No.6:16-cv-06780-MAT**

     -vs-                  **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

             Defendant.

─────────────────────────────

## INTRODUCTION

Robert Lee Scott, Jr. ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

On February 14, 2013, Plaintiff protectively filed for DIB, alleging disability beginning February 1, 2012, due to posttraumatic stress disorder ("PTSD"), alcoholism, anxiety, and depression. Administrative Transcript ("T.") 61. The claim was initially denied on June 10, 2013, and Plaintiff timely requested a hearing. T. 70-79. A hearing was conducted on March 6, 2015, in Rochester, New York, by Administrative Law Judge Brian Kane

("ALJ"). Plaintiff appeared with his attorney and testified. A vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on April 13, 2015. T. 9-22. Plaintiff's timely request for review was denied by the Appeals Council on October 13, 2016, making the ALJ's decision the final decision of the Commissioner. T. 1-4. Plaintiff then commenced this action. Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the Commissioner's decision is reversed and the matter remanded for further administrative proceedings consistent with this opinion. Defendant's motion is denied.

## LEGAL FRAMEWORK FOR THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Additionally, because there was medical evidence of substance use disorder, the ALJ performed the secondary analysis required by 20 C.F.R. § 404.1535.

Pursuant to 42 U.S.C. § 423(d)(2)(C), even if a claimant qualifies for disability benefits under the five-step analysis, the claimant "shall not be considered disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."

42 U.S.C. § 423(d)(2)(C); *see also* 20 C.F.R. § 404.1535(a). In determining whether a claimant's alcohol or drug abuse is a "material" factor, an ALJ is required to apply the following process codified at 20 C.F.R. § 404.1535(b):

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(b) ("§ 404.1535(b)"). The critical question is "whether [Commissioner] would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1); *see also* 20 C.F.R. 404.1535(b)(2)(i) ("If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). The claimant bears the burden of demonstrating

that any drug or alcohol use is not material to an otherwise favorable decision. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 124-25 (2d Cir. 2012).

### THE ALJ'S DECISION

Initially, the ALJ determined Plaintiff met the insured status requirements through December 31, 2016. T. 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since his alleged onset date of February 1, 2012. *Id.*

At step two, the ALJ determined that Plaintiff had the "severe" impairments of substance abuse and a history of PTSD. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. T. 15. The ALJ particularly considered Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Disorders) in making this determination. *Id.*

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional limitations: occasionally lifting and/or carrying twenty-five pounds; sitting for six hours and standing and/or walking for six hours; would likely occasionally have difficulty following directions and maintaining concentration for simple tasks; and could not learn new tasks. T. 16.

-4-

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a licensed practical nurse ("LPN"). T. 18. At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform. T. 18.

The ALJ then reverted to step three to apply the secondary analysis required by § 404.1535(b). Taking Plaintiff's alcohol abuse into consideration, the ALJ again found that Plaintiff did not have an impairment or combination of impairments that met or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 19. Again, the ALJ particularly considered Listings 12.04 and 12.06 in making this determination. *Id*.

Before proceeding to step four, the ALJ found that if Plaintiff stopped abusing alcohol, he would have the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional limitations: occasionally lifting and/or carrying twenty-five pounds; sitting for six hours and standing and/or walking for six hours; and being capable of attending and concentrating sufficiently to perform simple job tasks. T. 20.

At step four, the ALJ determined that Plaintiff was still unable to perform any past relevant work, even if he stopped

abusing alcohol. T. 21. At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age (44 years-old), education (high school diploma and nursing degree), work experience (LPN and Army medic), and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of battery tester and courier messenger. T. 21-22. The ALJ accordingly found that in the absence of alcohol abuse, Plaintiff would not have been under a disability as defined in the Act since the alleged onset date. T. 22.

## SCOPE OF REVIEW BY DISTRICT COURT

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must

scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

## I.  Plaintiff's First Argument: Failure to Consider the Opinion of Danny A. Martinez

On September 4, 2013, Plaintiff was examined by Danny A. Martinez ("Martinez"), a Compensation and Pension Coordinator with the VA, who indicates that he has training and experience as a licensed clinical psychologist. T. 523-33. Martinez indicates that Plaintiff enlisted the Army and served from 1986 to 1992, and received an honorable discharge. He obtained his LPN degree during his military service and in worked at an evacuation hospital stateside during the Persian Gulf War. After the military, he continued in the nursing field but had been unemployed for the past two years. He had signed up for a 6-month BOCES program beginning in October to retrain for General Maintenance work as he finds nursing triggering his symptoms of PTSD, and was having difficulty in settings where he has to interact with others. Martinez noted that "this desire to work without interacting socially is another symptom of PTSD." T. 526. Plaintiff had not received outpatient or

inpatient treatment for his mental health issues until about the time that he became unemployed and homeless two years ago; he then began consistently attending outpatient treatment through the VA for PTSD and alcohol use. Plaintiff started using alcohol before the military, and continued to use on a daily basis throughout his military career. It was after his head-on car accident in 2012 that he began using alcohol more heavily; his healthcare providers realized that he was using alcohol to self-medicate his underlying mental health problems, particularly his PTSD. He was put on Paxil and then Seroquel for his "trauma nightmares," but it was highly sedating and knocked him out to the point where he was unable to function.

Currently, Martinez noted that Plaintiff's symptoms included depressed mood; anxiety; suspiciousness; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; chronic sleep impairment; impairment of short- and long-term memory (e.g,. retention of only highly learned material, while forgetting to complete tasks); flattened affect; impaired judgment; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; inability to establish and maintain effective relationships; suicidal ideation; obsessional rituals which interfere with routine activities;

impaired impulse control, such as unprovoked irritability with periods of violence; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene. Plaintiff's current medications were paroxetine, prazosin, hydroxyzine, quetiapine.[1]

  Martinez concluded that Plaintiff's PTSD

> was directly connected to the stabbing and secondarily to his nursing role[,] in which he was continually exposed to the threat of death or injury in his patients, who had been inju[r]ed and were dying as he anticipated being deployed to the front. He functioned marginally after these trauma, until he was re-traumatized by a civilian MVA [motor vehicle accident], when the full spectrum of PTSD symptoms occurred, as is the case with a delayed onset PTSD.

T. 533. Martinez stated that the foregoing opinion was "based on [his] training and experience as a clinical psychologist in a VA PTSD program." *Id.*

As Plaintiff points out, the ALJ's decision contains no mention of Martinez's opinion. Plaintiff correctly notes that pursuant to the Commissioner's regulations, an ALJ must evaluate every medical opinion he receives, regardless of its source. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the Social Security Administration] will evaluate every medical opinion [it]

---

[1]

Paroxetine is used to treat depression, panic disorder, and social anxiety disorder. https://medlineplus.gov/druginfo/meds/a698032.html. Prazosin is prescribed to treat nightmares frequently associated with PTSD. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3538493/. Quetiapine is used along with other medications to treat depression. https://medlineplus.gov/druginfo/meds/a698019.html. Hydroxyzine is prescribed to treat sleep disorders in patients with PTSD. https://www.ncbi.nlm.nih.gov/pubmed/24993832.

receive[s].”); *see also*, *e.g.*, *Lopez v. Sec'y of Health and Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984) (“[The Second Circuit] ha[s] remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.”) (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975)). The Commissioner suggests, in a footnote, that the ALJ's failure to address Martinez's opinion was not error, or was at most harmless error, because Martinez is not really a psychologist. *See* Defendant's Memorandum of Law (“Def.'s Mem.”) at 19 n.7. The Commissioner notes that his electronic signature in the record is not accompanied by any professional credentials. T. 523, 533. Thus, the Commissioner asserts, Martinez's status as an acceptable medical source during the pertinent time-frame has not been established. However, the Commissioner does not offer any proof to controvert Martinez's statement that his opinion was “based on [his] training and experience as a clinical psychologist in a VA PTSD program.” T. 533.

Even assuming that Martinez is not a licensed clinical psychologist, the ALJ still was required to evaluate and weigh his opinion as an “other source.” *See* SSR 06-3p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006) (“With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not ‘acceptable medical sources,’ such as nurse practitioners, physician assistants, and licensed clinical social

workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists."). Thus, the Commissioner "recognizes that 'other source' opinions 'are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'" *Glena v. Colvin*, No. 1:15-CV-00510(MAT), 2018 WL 739096, at *3 (W.D.N.Y. Feb. 6, 2018) (quoting SSR 06-3p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006)). SSR 06-3p acknowledges that whether or not an opinion comes from an "acceptable medical source" is but one factor to consider when deciding the weight to give that opinion. *See* 2006 WL 2329939, at *5 ("[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source."). While an opinion from an "other source" was not entitled to the same presumption of deference as a "treating physician," a court is not precluded from giving more weight to an "other source" opinion than to an "acceptable medical source" opinion. *See id.* ("Giving more weight to the opinion from a medical source who is not an 'acceptable medical source' than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR

404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p, 'Titles II and XVI: Giving Controlling Weight To Treating Source Medical Opinions.'").

The Court finds that the failure to evaluate Martinez's opinion cannot be harmless, because it is highly relevant and probative as to the drug addiction and alcoholism ("DAA") materiality analysis required by § 404.1535(b) and Social Security Ruling ("SSR") 13-2p, 2013 WL 621536 (S.S.A. Feb. 20, 2013). Martinez's report provides compelling evidence that, while Plaintiff's alcohol abuse affects his medically determinable impairment of PTSD, the PTSD nonetheless is "irreversible or could not improve to the point of nondisability." SSR 13-2p, 2013 WL 621536, at *5. In that case, the "DAA [is] not material[.]" *Id.*; *see also id.* at *9 (The SSA "will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA."). Martinez opined that it was "at least as likely as not" that Plaintiff's PTSD was incurred in or caused by his experiences while in service. T. 532-33. Martinez stated "[n]ot applicable" in the section of the form asking whether he was providing a medical opinion for aggravation of a condition that existed prior to service, from which it can be inferred that Plaintiff's alcohol use (which pre-dated his service in the Army) did not exacerbate his PTSD. The ALJ erred in failing

to discuss the import of Martinez's opinion on his decision to deny Plaintiff's claim on the basis that limitations from his medically determinable mental impairments would improve in the absence of alcohol use.

The Commissioner's sole substantive argument in opposition to Plaintiff's argument concerning Martinez's opinion is that the ALJ was not bound by the conclusions reached by the VA regarding Plaintiff's disability status. As Plaintiff notes, that argument is inapposite because the gravamen of his argument is not that the ALJ was bound by the VA's disability findings. Rather, as discussed in the foregoing paragraphs, Plaintiff argues that the ALJ unjustifiably ignored Martinez's report, which was highly relevant to the DAA analysis and the ALJ's subsequent determination that Plaintiff was not disabled in the absence of his alcohol use.

Moreover, it appears that the ALJ did not accurately state the record when justifying his conclusion that Plaintiff would have no nonexertional limitations if he stopped his alcohol use. The ALJ noted "there is little indication that [Plaintiff] is involved in any group or individual therapy as treatment for [his PTSD] or any other psychological condition." T. 21. However, that conclusion is belied by Martinez's opinion stating that Plaintiff has been "consistently attending" outpatient treatment with the Rochester VA for PTSD and alcohol abuse (e.g., from August to December of 2012, and from December 2012, to January 2013, with the Buffalo VA. T. 526-27. The ALJ's statement that "[t]here is no evidence of ongoing difficulties outside [Plaintiff's] substance use" is a

significant mischaracterization of the medical and other records, as succinctly summarized in Martinez's opinion.

The ALJ also reasoned that in terms of limitations on attending and concentrating, "there is no evidence of a limitation to the degree that it would be disabling. Plaintiff does household chores and currently has a volunteer position. This likely would continue were he to refrain from substance abuse." This reasoning is unpersuasive and overemphasizes the evidentiary value of Plaintiff's daily activities. First, the key challenge to the RFC assessment is the lack of non-exertional limitations to address the limitations caused by Plaintiff's PTSD. Plaintiff's ability to do household chores in the privacy of his home is not probative as to his ability to perform the mental functions required for full-time (defined as five days a week, eight hours a day), gainful employment in a competitive work environment. Second, there is no evidence that Plaintiff's volunteer position was the substantial equivalent, insofar as functional requirements or time requirements, of competitive, full-time, substantial gainful employment. *See Balsamo v. Chater*, 142 F.3d 75, 81–82 (2d Cir. 1998). "Courts have consistently noted that '[i]t is legal error to give excessive weight to a claimant's ability to perform basic daily activities when assessing his or her ability to engage in substantial gainful activity.'" *Dailey v. Colvin*, No. 1:14-CV-00841-MAT, 2017 WL 2569683, at *4 (W.D.N.Y. June 14, 2017) (quoting *Moss v. Colvin*, No. 1:13-CV-731-GHW-MHD, 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014); citation omitted).

"There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." *Moss*, 2014 WL 4631884, at *33 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. . . .")).

While the Second Circuit has held that disability "applicants bear the burden of proving that they would be disabled in the absence of DAA," *Cage*, 692 F.3d at 120, the Court cannot say that "substantial evidence supported the ALJ's finding that [Plaintiff] would not be disabled absent DAA." *Id.* Not only did the ALJ ignore a highly relevant opinion from Martinez, who evaluated Plaintiff and has expertise in PTSD, the ALJ's supporting rationale "was based on several mischaracterizations of the record, thereby rendering the RFC assessment legally flawed and unsupported by substantial evidence." *Seignious v. Colvin*, No. 6:15-CV-06065(MAT), 2016 WL 96219, at *5 (W.D.N.Y. Jan. 8, 2016) (citing *Ellis v. Colvin*, 29 F. Supp.3d 288, 302 (W.D.N.Y. 2014) ("It was plainly improper for the ALJ to bolster his own RFC assessment with a blatant misstatement of the record.") (further citations omitted)).

For all of the reasons discussed above, the Court cannot say the ALJ's failure to even address Martinez's opinion was harmless error. Moreover, SSR 13-2p makes it clear that the ALJ must

"provide sufficient information so that a subsequent reviewer considering all of the evidence in the case record can understand the reasons for the . . . findings," 2013 WL 621536, at *2, made in regards to the DAA materiality issue. In short, the record reveals that the DAA materiality analysis and resultant RFC is not based on substantial evidence, and there is insufficient information provided in the ALJ's decision for this Court to credit the ALJ's rationale.

## II. Plaintiff's Second Argument: Failure to Explain How Opinion of Non-Examining State Agency Psychological Consultant Supports Finding that Plaintiff's Alcohol Use Was Material

On June 6, 2013, Lisa Blackwell, Ph.D., a State agency psychologist, reviewed Plaintiff's file. T. 63-67. Dr. Blackwell opined that Plaintiff was mildly limited in his activities of daily living and social functioning; faced moderate difficulties with respect to concentration, persistence, or pace; and had never experienced an extended episode of decompensation. T. 64. In particular, Dr. Blackwell assessed "moderate" problems in the following functional domains: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to deal with the general public; the ability to respond appropriately to changes in the work

setting; and the ability to set realistic goals or make plans independently of others. T. 65-67.

When explaining these RFC findings further, Dr. Blackwell noted that "MSE [mental status examination] findings are more in keeping with [Plaintiff] being capable of doing simple task[s] which also appears consistent with VA reports." T. 67. However, the ALJ failed to explain how he reconciled Dr. Blackwell's conclusions, purportedly based on consultative psychologist Dr. Christine Ransom's mental status examination of Plaintiff, with the ability to do simple work-related tasks.

Dr. Ransom's report was based on her clinical observations of Plaintiff during the consultative examination which led her to formulate a very restricted medical source statement. In particular, Dr. Ransom noted that on mental status examination, his motor behavior was lethargic; eye contact was downcast; speech was slow and halting; quality of voice was moderately to markedly dysphoric and tense; affect was moderately to markedly dysphoric; attention and concentration was mildly impaired (he could only do 2/3 simple calculations and had difficulty with serial 3's); immediate memory was mildly impaired (he could only remember 1/3 objects immediately, and could only recite 3 digits forward and 2 digits backwards); and recent memory was mildly repaired (he could only remember 1 out of 3 objects after 5 minutes).

The ALJ found that Dr. Ransom's opinion was not entitled to "any great weight." T. 18. He asserted that it was based on "almost exclusively" on Plaintiff's subjective complaints. However, this

does not appear to be the case since, as set forth above, Dr. Ransom conducted a mental status examination of Plaintiff. As a result of her evaluation, Dr. Ransom opined that he

> will have moderate difficulty following and understanding simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks. He would have moderate to marked difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress. Areas of difficulty are secondary to posttraumatic stress disorder, currently moderate to marked; major depressive disorder; currently moderate to marked; panic disorder with agoraphobia, currently moderate to marked. The results of the evaluation are consistent with the claimant's allegations.

T. 278-79. Dr. Ransom listed Plaintiff's diagnoses as PTSD; major depressive disorder, panic disorder, and alcohol dependence. T. 279. Notably, although she was clearly aware of his alcohol dependence, Dr. Ransom did not find that his areas of difficulty in work-related functioning were "secondary" to his alcohol abuse.

The ALJ's explanations for the respective weights given to Drs. Ransom's and Dr. Blackwell's opinions are not based on substantial evidence. Rather, it appears that the ALJ chose to adopt only that portion of the opinion evidence supportive of a finding on non-disability, i.e., Dr. Blackwell's conclusion, based solely on a records-review, that Plaintiff could perform simple work without any other nonexertional limitations. However, in cases where disability is alleged based on mental impairments, "[t]here can be no serious doubt that a psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record." *Westphal*

*v. Eastman Kodak Co.*, No. 05-CV-6120, 2006 WL 1720380, at *5 (W.D.N.Y. June 21, 2006). As noted above, the ALJ ignored Martinez's opinion, and essentially dismissed Dr. Ransom's more restrictive opinion, both of which were based on in-person evaluations of Plaintiff. This selective parsing of the record further compels the conclusion that the ALJ's RFC assessment was not based on substantial evidence. *See*, *e.g.*, *Wolfanger v. Colvin*, No. 6:16-CV-06688(MAT), 2018 WL 2425811, at *4 (W.D.N.Y. May 30, 2018) (reversing where "RFC determination relie[d] on the impermissible cherry-picking of evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661(MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015) ("While an ALJ is entitled to resolve conflicts in the evidentiary record, [he or] she 'cannot pick and choose evidence that supports a particular conclusion.'") (quoting *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988); citations omitted).

**REMEDY**

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405(g)). The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude

that the additional evidence might support the Commissioner's claim that the claimant is not disabled, *Butts*, 388 F.3d at 385–86.

After reviewing the entire record, the Court finds that it already has been developed fully for the relevant period. Furthermore, the Court finds that the record contains persuasive proof of Plaintiff's disability. The ALJ inexplicably ignored relevant evidence from Martinez, the VA Compensation and Pension Coordinator, who indicates that he has training and experience as a licensed clinical psychologist. Whether Martinez is a psychologist and an "acceptable medical source" or an "other source," as insinuated by the Commissioner, the ALJ should have considered his opinion. Based on the absence of any non-exertional limitations in the RFC assessment, apart from restricting Plaintiff to "simple work," the ALJ apparently accorded the most weight to non-examining review consultant Dr. Blackwell and essentially no weight to the opinion of examining consultative psychologist Dr. Ransom. Dr. Ransom, who conducted a face-to-face evaluation of Plaintiff, issued a report containing observations and a medical source statement that was consistent with Martinez's opinion. Applying the correct legal standards to all of the relevant evidence, the Court concludes that Plaintiff's mental impairments are disabling in the absence of his alcohol use. Accordingly, the Court finds that a remand for further administrative proceedings to correct the above-discussed errors would serve no purpose, and remand for the calculation of benefits is warranted.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed and the matter is remanded solely for the calculation and payment of benefits. The Commissioner's motion for judgement on the pleadings is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: December 14, 2018
       Rochester, New York